UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MICHAEL ANGELO BURNETT,

                Plaintiff,

v.

MARY SCHULTZ, et al.,

                Defendants.

_____/

Case No. 2:25-cv-267

Honorable Phillip J. Green

**OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff filed an application to proceed *in forma pauperis* (ECF No. 2), and pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge.  (ECF No. 13.)

      Plaintiff is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g).  Where a plaintiff is ineligible for *in forma pauperis* status under 28 U.S.C. § 1915, "he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002).  That means payment should precede preliminary review pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c), which the Court is required to conduct prior to the service of the complaint.  *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the

named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff— at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

2

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c).  That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).  Because the named defendant has not yet been served, the undersigned concludes that the defendant is not presently a party whose consent is required to permit the undersigned to enter an opinion, order, and judgment denying Plaintiff leave to proceed *in forma pauperis* and dismissing this action without prejudice.  *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

As set forth below, Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious, or for failure to state a claim, and Plaintiff has not demonstrated that he is in imminent danger of serious physical injury to allow him to proceed *in forma pauperis* in this action.  Further, Plaintiff has not paid the

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

$405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.[2]  Accordingly, this action will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

## I.    Motions to Appoint Counsel

Plaintiff filed two motions to appoint counsel to represent him in this matter. (ECF Nos. 7, 37.)  Plaintiff requests appointment of counsel and lists several reasons why the Court should appoint counsel: the factual complexity of Plaintiff's case, his inability to investigate his claims, the potential for conflicting testimony, his inability as an indigent Plaintiff to present his claims, the legal complexity of his case, and the merits of his claims.  (*See, e.g.*, ECF No. 37, PageID.96.)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney.  *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993).  The Court may, however, request an attorney to serve as counsel, in the Court's discretion.  *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances.  In determining whether to exercise its discretion, the Court should

---

[2] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $55.00. 28 U.S.C. § 1914(b); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. However, the miscellaneous administrative fee "does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's motions to appoint counsel (ECF Nos. 7 and 37) will, therefore, be denied.

## II.    Discussion

The PLRA, which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

5

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal.  The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury."  The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation.  *Wilson v. Yaklich*, 148 F.3d 596, 604– 06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan.  In more than three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim.  *See* Op. & J., *Burnett v. Marschke et al.*, No. 2:09-cv-225 (W.D. Mich. Feb. 5, 2010), (ECF Nos. 6, 7); Op. & J., *Burnett v. Hofbauer et al.*, No. 2:09-cv-192 (W.D. Mich. Dec. 2, 2009), (ECF Nos. 8, 9); Op. & J., *Burnett v. Caruso et al.*, No. 2:09-cv-180 (W.D. Mich. Oct. 8, 2009), (ECF Nos. 8, 9); Op. & J., *Burnett v. Hill et al.*, No. 2:09-cv-39 (W.D. Mich. Mar. 6, 2009), (ECF Nos. 8, 9); Op. & Order, J., *Burnett v. Caruso et al.*, No. 2:08-cv-168 (W.D. Mich. Jan. 5, 2009), (ECF Nos. 15, 16.)  In addition, Plaintiff has been denied leave to proceed *in forma pauperis* under the three-strikes rule in numerous cases.  All of Plaintiff's dismissals were entered after enactment of the PLRA on April 26, 1996,

6

and all the dismissals constitute "strikes" under the standard articulated by the Sixth

Circuit in *Crump v. Blue*, 121 F.4th 1108 (6th Cir. 2024).

As explained below, Plaintiff's allegations in the present action do not fall

within the "imminent danger" exception to the three-strikes rule.  28 U.S.C. § 1915(g).

The Sixth Circuit set forth the following general requirements for a claim of imminent

danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id.* at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf.* [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).

> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013).  A

prisoner's claim of imminent danger is subject to the same notice pleading

requirement as that which applies to prisoner complaints.  *Id.*  Consequently, a

prisoner must allege facts in the complaint from which the Court could reasonably

7

conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

### A.    Plaintiff's Second Amended Complaints

Plaintiff initiated this action on October 7, 2025, while incarcerated at Chippewa Correctional Facility (URF). (ECF No. 1.) Plaintiff filed an amended complaint on March 13, 2026. (ECF No. 23.) On May 4, 2026, Plaintiff notified the Court of his change of address to Macomb Correctional Facility (ECF No. 34), and subsequently filed a motion for leave to file a second amended complaint on June 4, 2026. (ECF No. 38.) On July 13, 2026, Plaintiff filed a second motion for leave to file an amended complaint. (ECF No. 40.) In a separate order, the Court granted Plaintiff's motions to file a second amended complaint. To construe Plaintiff's claims in the light most favorable to Plaintiff, the Court will consider the two proposed second amended complaints, ECF Nos. 38-1, 40-1, as a singular complaint in this action.

### B.    Factual Allegations

In his second amended complaint, Plaintiff sues the following individuals: MDOC Director Heidi Washington, URF Warden James Corrigan, Retired Warden Sherry Burt, Retired Warden Willie Smith, Lakeland Correctional Facility Warden Bryan Morrison, Bellamy Creek Correctional Facility Warden Matthew Macauley, Alger Maximum Correctional Facility Warden David Bergh, Baraga Correctional Facility Warden Linda Tribley, Marquette Branch Prison Warden Gerald Hofbauer, Marquette Branch Prison Deputy Warden James Alexander, Marquette Branch Prison Deputy Warden Unknown Gearin, Marquette Branch Prison Deputy Warden

8

Catherine Alto, Lakeland Correctional Facility Nurse Mary Schultz, URF Nurse Alicia Payment, and URF Nurse John Doe.[3]  (2d Am. Compl., ECF Nos. 38-1, 40-1, PageID.102–104, 115–117.)

Plaintiff alleges he is "challenging Correctional Facilities Administration (CFA) institutions Wardens' right to subject [him] to excessive force without a legitimate security reason."[4]  (*Id.*, ECF No. 40-1, PageID.118.)  Plaintiff states that he has been subjected to "rape, sodomy, sexual harassment, beatings, and assaults with a weapon [and] as a victim of their excessive force for 22 years [he] has suffered serious physical and mental injuries."  (*Id.*)  Plaintiff alleges that he is "subjected to excessive force without a legitimate security reason by [Defendants] James Corrigan, Sherry Burt, Willie O. Smith, Bryan Morrison, Matt Macauley, David Bergh, Linda Tribley, Gerald Hofbauer, James Alexander, Gearin, Catherine Alto, Does, and their Administration." (*Id.*, ECF No. 38-1, PageID.105.)  Plaintiff further alleges that these actions are done "at [Defendants'] request without endangering themselves."  (*Id.*)  Plaintiff alleges that he "believe[s] some of the corrections officers involved in harming [him] were wearing someone else's name tag while engaged in criminal activity at these institutions . . . [and] the maltreatment described herein is still ongoing to this day." (*Id.*, ECF No. 40-1, PageID.119.)  Plaintiff states he "may not even live long enough to litigate these claims to trial because of a serious injury [he]

---

[3] Where Plaintiff has provided conflicting titles for a Defendant between his two second amended complaints, the Court uses the titles listed in Plaintiff's most recently filed second amended complaint, (ECF No. 40-1.)

[4] In this opinion, the Court corrects the punctuation, grammar, and spelling in quotations from Plaintiff's filings.

suffered, e.g., damaged prostate [for] which [he] is denied medical care for the resulting cancer.  This claim is before the Honorable Paul L. Maloney (Case No. 2:25-cv-203)."  (*Id.*)

Plaintiff's complaint alleges that "the security measures implemented by the Wardens at their CFA institutions encourages guards' and inmates' criminal activities [and] how these Wardens protect their CFA institutions is shrouded in secrecy." (*Id.*, ECF No. 38-1, PageID.105.)  Plaintiff further alleges that the "informal security measures remain at the very center of the abuse [received by Plaintiff]." (*Id.*, ECF No. 40-1, PageID.118.)

Plaintiff's complaint states that he is "a vulnerable prisoner because [he is] perceived as having a serious mental illness (SMI)," and that "the institutions use [his] SMI to misrepresent the truth about the informal security measures in use at these institutions."  (*Id.*)  Plaintiff alleges that "no one has reported the physical maltreatment . . . [and] the Wardens [and] mental and medical health services must report this abuse as required by federal and state law."  (*Id.* (emphasis removed).)  Plaintiff is "told [his] accusations are rooted in [his] mental illness and [he is] prescribed medication over [his] objections for a 'perceived' mental illness."  (*Id.*; *see also id.*, ECF No. 38-1, PageID.105.)  Plaintiff claims that "[b]ecause of [his] SMI, [he] has been denied protection from the harm, which undermines [his] right to participate in a service, program, or activity under federal and state disabled persons' statutes."  (*Id.*, ECF No. 40-1, PageID.118.)  Plaintiff states he is "feeling confuse[d] and vulnerable as a result of the sexual, physical, and mental abuse. [He is] suffering

10

from serious physical and mental trauma as a victim of excessive force." (*Id.*, ECF No. 38-1, PageID.105.)

Further, Plaintiff claims that "nurses are instructed by these Wardens to deny [him] medical care if [he] gets sick. [Plaintiff] got sick and was denied medical care by [non-party] Nurse Practitioner Brenda Buchanan and [Defendant Lakeland Correctional Facility Nurse] Mary Schultz." (*Id.*) Plaintiff also states he has "been denied medical care or had [his] reported injuries downgraded by . . . [Defendants Lakeland Correctional Facility Nurse] Mary Schultz and [URF Nurses] Alicia Payment and John Doe." (*Id.*, ECF No. 40-1, PageID.118–119.)

Plaintiff alleges that he exhausted his available remedies but "was punished for doing so by [non-parties] Sergeant Abramson and Captain Perish[5] with two disciplinary reports . . . [and a]t the hearing, Captain Perish entered a false guilty plea and forged [Plaintiff's] signature to the report." (*Id.*, ECF No. 38-1, PageID.106.) Further, Plaintiff claims he has "been punished as a result of filing a grievance addressing the informal security measures and how [he] is harmed as a result of their implementation (statewide) since 2005." (*Id.*, ECF No. 40-1, PageID.119.) Plaintiff concludes that "[Defendant] Heidi E. Washington is the only person that can grant [him] the relief [he] seek[s]. [He] would like to change how the MDOC protects CFA institutions without compromising internal security or public safety, in which, the informal policy and practice currently does." (*Id.*, ECF No. 38-1, PageID.106; *see also id.*, ECF No. 40-1, PageID.119.)

---

[5] Plaintiff does not indicate where these non-parties are employed.

11

### C.    Three-Strikes Analysis

As explained below, Plaintiff fails to show that he is *presently* in imminent danger from any of the named Defendants.  The core of Plaintiff's complaint centers on his belief that the Correctional Facilities Administration (CFA) and their "informal security measures" are responsible for his ongoing maltreatment.  (*Id.*, ECF No. 40-1, PageID.118–119.)  Although Plaintiff uses present tense verbs in several of his allegations, for example, that he "*is* subjected to excessive force," (*id.*, ECF No. 38-1, PageID.105 (emphasis added)), Plaintiff fails to provide facts with names or dates and, significantly, none of the named Defendants are at his present facility.  (*See id.*, PageID.102–104; *see also id.*, ECF No. 40-1, PageID.115–117.)  Defendants Corrigan, Morrison, Macauley, Bergh, Tribley, Hofbauer, Alexander, Gearin, Alto, Schultz, Payment, and Doe are all employed at URF, Lakeland Correctional Facility, Bellamy Creek Correctional Facility, Alger Maximum Correctional Facility, Baraga Correctional Facility, or Marquette Branch Prison.  (*Id.*)  Not only are these individuals not employed where Plaintiff is presently incarcerated, but there are no facts regarding their present involvement in any allegations beyond the vague allegation that they work at a CFA facility.  (*See generally* 2d Am. Compl., ECF Nos. 38-1, 40-1.)  Therefore, as to those Defendants, any alleged danger is either in the past or is theoretical, which necessarily fails to show the temporal proximity required by *Vandiver*, 727 F.3d at 585.  Defendants Burt and Smith are described as retired wardens in Plaintiff's complaint, but again, there are no allegations regarding their involvement in any violations described by Plaintiff.  (*Id.*)  Plaintiff alleges the conclusory fact of "excessive force" and then attributes the violations to unnamed non-

party guards and inmates using force at the request of the Defendants who are either at other correctional facilities or retired. (*See id.*, ECF No. 38-1, PageID.105.)  In short, Plaintiff has failed to allege any facts in his complaint for the Court to reasonably conclude that he faces imminent danger from the MDOC director, wardens and staff at other correctional facilities, or retired wardens named as Defendants.  *See Vandiver*, 727 F.3d at 585.

Plaintiff's remaining allegations regarding medical treatment and disciplinary reports also fail to show that he is presently in imminent danger.  Plaintiff alleges that nurses are instructed to deny him medical care *if* he gets sick, that he *was* denied medical care, *was* subjected to unwanted mental health treatment, and *was* punished for exhausting his administrative remedies.  (*See* 2d Am. Compl., ECF No. 38-1, PageID.105–106; *see also id.*, ECF No. 40-1, PageID.118–119) (emphasis added).)  Plaintiff's allegations regarding what may happen if he gets sick and his claimed past harm are insufficient to invoke the exception to the three-strike rule.  *See Rittner*, 290 F. App'x at 797–798.  As Plaintiff identified in this present matter, his medical care claims are proceeding in a separate federal civil rights matter.[6]

Moreover, even if this Court were to conduct the 28 U.S.C. § 1915(g) screening for imminent danger based on Plaintiff's first amended complaint, his claims would still fail to constitute an exception to the three-strike rule.[7]  Plaintiff's allegations in

---

[6] Plaintiff's lawsuit regarding medical treatment is *Burnett v. Russo*, No. 2:25-cv-203 (W.D. Mich.).

[7] The Court does not review Plaintiff's original complaint, filed on October 7, 2025 (ECF No. 1), as it alleged facts pertaining to Plaintiff's mother, who was dismissed as a party from this lawsuit. (ECF No. 8). Plaintiff has filed three amended complaints

his first amended complaint are nearly identical to those in his second amended complaint, but he additionally alleges that he is "forced to eat CO feces and swallow their urine or semen" and states that this excessive force is done by corrections officers "at the requests of CEO [sic] Wardens." (Am. Compl., ECF No. 23, PageID.51.) At the time Plaintiff filed his first amended complaint, he was incarcerated at URF and named URF Warden James Corrigan as a defendant, among others.[8] (*Id.*, ECF No. 23. PageID.47–49.) Plaintiff's claims regarding forcible consumption of human waste have been allegations in previously filed meritless lawsuits, most recently in *Burnett v. Corrigan et al.*, No. 2:25-cv-136 (W.D. Mich). Additionally, in three cases filed in 2020, Plaintiff alleged that various officials used the prison "Safety System" to deliver feces and urine directly into Plaintiff's mouth over a period of years. *See Burnett v. Macauley et al.*, No. 1:20-cv-1116 (W.D. Mich.); *Burnett v. Wilborn et al.*, No. 1:20-cv-1161 (W.D. Mich.); *Burnett v. Washington*, No. 1:20-cv-1173 (W.D. Mich.).[9] In at least some of those cases, Plaintiff admitted that

---

since that time (ECF Nos. 23, 38, and 40), and the Court addresses those three filings in this opinion.

[8] Plaintiff also named the following Defendants in his first amended complaint: MDOC Director Heidi Washington, Lakeland Correctional Facility Warden Bryan Morrison, Retired Warden Gerald Hofbauer, Marquette Branch Prison (MBP) Warden Catherine Alto, MBP Warden James Alexander, MBP Warden Gearin, Retired Warden Willie Smith, and Lakeland Correctional Facility Nurse Mary Schultz. (Am. Compl., ECF No. 23. PageID.47–49.) For the same reasons discussed above, Plaintiff has failed to allege any facts in his complaint for the Court to reasonably conclude that he is under an existing danger from the MDOC director, wardens of other facilities, or retired wardens. *See Vandiver*, 727 F.3d at 585.

[9] Plaintiff's allegations are also similar to allegations in complaints he filed in the United States District Court for the Eastern District of Michigan. *See Burnett v. Jenkins et al.*, No. 2:19-cv-13513 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility and Ionia Correctional Facility delivered feces and urine into

he suffered from paranoia and schizophrenia.  In each of these preceding cases, the Court determined that Plaintiff's allegations of imminent danger were irrational and baseless.  Here, for all of the reasons set forth above, the Court determines that Plaintiff's allegations in his first and second amended complaints do not support a conclusion that Plaintiff is in imminent danger of serious physical injury within the meaning of § 1915(g).  *See Vandiver*, 727 F.3d at 585; *Rittner*, 290 F. App'x at 798.

Accordingly, Plaintiff is barred from proceeding *in forma pauperis* under § 1915(g).  Plaintiff also has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.  The Court will therefore dismiss this action without prejudice.  *See Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) ("[T]he proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed *in forma pauperis* pursuant to the three strikes provision of § 1915(g).").  Plaintiff is free to refile his complaint as a new action in this Court if he submits the filing fees at the time that he initiates the new action.

---

his mouth using the prison safety systems); *Burnett v. Walsh et al.*, No. 2:18-cv-11063 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility used the Safety System to deliver feces and other bodily fluids into his mouth); *Burnett v. Herron et al.*, No. 5:18-cv-12471 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility put feces into his mouth at least three times a week). Additionally, Plaintiff's allegations are similar to allegations in the complaint that he filed in *Burnett v. Corrigan et al.*, No. 2:22-cv-129 (W.D. Mich.), in which he alleged that officials at Chippewa Correctional Facility sprayed human waste in his face and mouth using an industrial-sized spray bottle.

### III.    Remaining Pending Motions

Additionally, Plaintiff has filed motions for a temporary restraining order (ECF Nos. 6, 14, and 16), a motion for U.S. Marshals intervention (ECF No. 19), a motion to expedite consideration of the motion for a temporary restraining order (ECF No. 22), a motion for U.S. Marshals investigation (ECF No. 24), an amended motion for a temporary restraining order (ECF No. 27), a motion for preliminary injunction (ECF No. 33), motions for default judgment (ECF No. 29 and 35), and a motion to expedite the prescreening of his complaint. (ECF No. 36.)

As set forth in this opinion, the Court will dismiss this action without prejudice to Plaintiff's right to refile his complaint as a new action in this Court with the full civil action filing fees because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious, or for failure to state a claim and Plaintiff has not demonstrated that he is in imminent danger of serious physical injury to allow him to proceed *in forma pauperis* in this action.  Accordingly, the Court will dismiss the above-listed motions as moot.

### Conclusion

For the foregoing reasons, the Court will deny Plaintiff leave to proceed *in forma pauperis*.  Further, the Court will deny Plaintiff's motions to appoint (ECF Nos. 7 and 37), and the Court will dismiss Plaintiff's remaining motions (ECF Nos. 6, 14, 16, 19, 22, 24, 27, 29, 33, 35, and 36) as moot.  The Court dismisses this action without

prejudice to Plaintiff's right to refile his complaint as a new action in this Court with the full civil action filing fees.[10]

For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.   *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth,* 114 F.3d 601, 611 (6th Cir. 1997).  Further, should Plaintiff appeal this decision, he must pay the $605.00 appellate filing fee in a lump sum, because he is prohibited from proceeding *in forma pauperis* on appeal by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated:  July 17, 2026                    /s/ Phillip J. Green
                                        PHILLIP J. GREEN
                                        United States Magistrate Judge

---

[10] Because Plaintiff has the opportunity to refile his complaint as a new action in this Court by paying the full civil action filing fees at the time of filing the new action, the Court will not assess the district court filing fees in the present action.

17